*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0117p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

—————————

SHARON TURNBULL SYBRANDT,
  *Plaintiff-Appellant,*

  *v.*

No. 08-5598

HOME DEPOT, U.S.A., INC.,
  *Defendant-Appellee.*

—————————

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 07-00031—William J. Haynes, Jr., District Judge.

Argued: March 10, 2009

Decided and Filed: March 26, 2009

Before: BOGGS, Chief Judge; GILMAN and ROGERS, Circuit Judges.

—————————

**COUNSEL**

**ARGUED:** August C. Winter, LAW OFFICE, Brentwood, Tennessee, for Appellant.
Elizabeth S. Washko, OGLETREE DEAKINS, NASH, SMOAK & STEWART, P.C.,
Nashville, Tennessee, for Appellee. **ON BRIEF:** August C. Winter, LAW OFFICE,
Brentwood, Tennessee, for Appellant. Keith D. Frazier, Wendy V. Miller, OGLETREE
DEAKINS, NASH, SMOAK & STEWART, P.C., Nashville, Tennessee, for Appellee.

—————————

**OPINION**

—————————

RONALD LEE GILMAN, Circuit Judge. Sharon Turnbull Sybrandt sued her former
employer, Home Depot, U.S.A., Inc., alleging that it had violated Title VII of the Civil
Rights Act of 1964 (Title VII) and the Tennessee Human Rights Act (THRA) by terminating
her employment because of her sex. Home Depot filed a motion for summary judgment,
arguing that it had a legitimate, nondiscriminatory reason for terminating Sybrandt based
upon her violation of a company policy that prohibited the use of an employee's password-

1

protected user-identification code to conduct personal transactions involving Home Depot merchandise. For the reasons set forth below, we **AFFIRM** the district court's grant of summary judgment in favor of Home Depot.

## I. BACKGROUND

### A.     Factual background

Sybrandt began working in November 1991 at one of Home Depot's stores in Nashville, Tennessee. She was promoted to the position of Assistant Store Manager in May 2002. Six months later her official title was changed to Operations Assistant Manager. Home Depot terminated Sybrandt in February 2006 for allegedly violating the company's "no-self-service" policy. Sybrandt claims that she was replaced by a male employee, a fact that Home Depot does not dispute.

The policy that led to Sybrandt's discharge prohibits employees from using their own security codes to effectuate certain personal transactions. In particular, the Home Depot Code of Conduct forbids employees from

> performing or authorizing a transaction for oneself, friend(s) or family including but not limited to the following: . . . [c]reating, modifying or completing Special Services . . . transactions including special orders, will calls, quotes, measures and installations.

Home Depot's Code of Conduct also states that a breach of this policy is considered a "Major Work Rule Violation[]" that "will normally result in termination for a first offense . . . ."

Sybrandt was aware of Home Depot's policy before she was terminated. During her deposition, Sybrandt explained that the key purpose of the policy is to deter theft and dishonesty by Home Depot employees. She elaborated that the policy prevents employees from, for example, purchasing merchandise and then using Home Depot's computers to show that they had "returned" the products for a "refund"—when in reality the employees have simply pocketed both the goods and the refund. Sybrandt acknowledged that another purpose of the policy is to prevent even the appearance of impropriety.

Home Depot terminated Sybrandt in February 2006 for allegedly breaching its "no-self-service" policy in two ways. First, on November 30, 2005, Sybrandt allowed a coworker to use the former's password-protected user ID to process a special-service order for Sybrandt. Next, on December 28, 2005, Sybrandt entered electronic "notes" on the computerized history of the same transaction, indicating that she wanted to cancel part of her order and receive a refund. Home Depot concluded that both actions violated the policy against allowing employees to service their own special-order transactions.

Before reaching this conclusion, however, Home Depot conducted an internal investigation. The investigation was handled by a district loss-prevention manager, Matt Bollinger, and a Human Resources supervisor, Johnna Atwill. Bollinger and Atwill interviewed Sybrandt in mid-January 2006 as part of the inquiry. They explained to Sybrandt that she was the subject of an investigation regarding her special order. Sybrandt recalls, however, that Bollinger did not seem concerned about the notes that she had entered accompanying her transaction on December 28, 2005.

Bollinger and Atwill faxed information derived from their initial investigation to Ed Malowney, one of Home Depot's Employment Practices Managers. Malowney asked them to do more factfinding. The full results of the investigation included a written description of security-camera footage from the Home Depot store on November 30, 2005, which depicted a desk associate entering information into a computer workstation under Sybrandt's password-protected user ID while speaking to Sybrandt. Bollinger's and Atwill's investigation also included witness statements. After reviewing the results of the investigation, Malowney recommended to his superiors that Home Depot terminate Sybrandt's employment. This recommendation was ultimately approved.

Sybrandt received a discharge notice from Home Depot in February 2006 that explained her termination in the following words:

> On November 30, 2005, and December 28, 2005, Sharon made entries to her personal order #189775, therefore violating company policy regarding special orders.

> Per company policy as stated in the Manager's Code of Conduct –

> Failure to Act with Integrity and Honesty:

> Creating, modifying or completing Special Services . . .
> transactions including special orders . . . .

Sharon was in direct violation of company policy when she performed transactions in her own special order. Failure to act with integrity and honesty is considered a major work rule violation and is subject to termination. Based upon Sharon's actions the company has made the decision to end the business relationship effective immediately.

In explaining his recommendation to terminate Sybrandt, Malowney stated in his deposition that Sybrandt had breached Home Depot's policy irrespective of whether she actually intended to commit any wrongdoing. Malowney also said that Sybrandt breached company policy by allowing another employee to use Sybrandt's user ID to make entries on the special order on November 30, 2005. As for the notes that Sybrandt entered on her own transaction on December 28, 2005, Malowney viewed this to be a policy violation because

> the whole point of that policy is that you don't do anything [in] a transaction that you are personally involved in. You need to disqualify yourself, go to another [employee], and have another [employee] use their [user ID] to go into that system.

In light of his interpretation of company policy, Malowney acknowledged that any time an employee has made "any kind of entry whatsoever into his or her own Special Services Order," he has recommended terminating the employee in question. Indeed, Malowney has recommended discharging 18 Home Depot employees for this reason over the three-year period preceding his deposition for this case. Malowney nevertheless conceded that the Home Depot's Code of Conduct does not expressly discuss the circumstances under which writing a "note" about one's own transaction would be a violation of Home Depot's policy.

**B.        Procedural background**

Sybrandt sued Home Depot in early January 2007, alleging unlawful employment discrimination based on sex, in violation of both Title VII, 42 U.S.C. § 2000e-2(a)(1), and the THRA § 4-21-101 et seq. Her original complaint also included allegations of wage discrimination, but she voluntarily dismissed that claim. Home Depot filed a motion for summary judgment in November 2007 as to Sybrandt's remaining claims of sex discrimination brought under Title VII and the THRA. The district court granted the motion in April 2008. This timely appeal followed.

## II.  ANALYSIS

### A.      Standard of review

We review de novo the district court's grant of summary judgment.  *See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008).  Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986).

### B.      Disparate-treatment claim

#### 1.      *Framework for disparate-treatment claims brought under Title VII*

Employers are prohibited from, among other things, discharging an employee because of that individual's sex.  42 U.S.C. § 2000e-2(a)(1).  Both this court and the state courts in Tennessee have evaluated claims brought under the THRA in the same manner as Title VII claims.  *Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 673 (6th Cir. 2008); *Graves v. Circuit City Stores, Inc.*, No. 03A01-9501-CH-00012, 1995 WL 371659, at *2 (Tenn. Ct. App. June 21, 1995) ("Our Courts have looked to federal case law applying the provisions of the federal anti-discrimination statutes as the baseline for interpreting and applying the Tennessee Act.")  The parties on appeal have articulated their arguments exclusively in terms of Title VII jurisprudence.  Our disposition of Sybrandt's Title VII claim will therefore apply with equal force to her THRA-based claim.

Direct or circumstantial evidence may be used to establish an employee's claim of discrimination.  Circumstantial evidence of discrimination is "analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and later modified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)."  *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006).

The *McDonnell Douglas/Burdine* framework first requires

> that the plaintiff establish a prima facie case. Once a prima facie case has been shown, the plaintiff is entitled to a presumption that the defendant discriminated against him or her in violation of Title VII. The defendant then bears the burden of production to put forth a legitimate, nondiscriminatory reason for the complained of adverse treatment. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant meets this burden, the presumption of discrimination created by the prima facie case falls away and the plaintiff then needs to show that the defendant's legitimate nondiscriminatory reason was a pretext for discrimination. Throughout this burden-shifting approach, the plaintiff continues to bear the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate.

*Wright*, 455 F.3d at 706-07 (citations and internal quotation marks omitted).

Plaintiffs may establish pretext by showing that the proffered reason "(1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action." *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009) (citing *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994)). A "plaintiff may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *White*, 533 F.3d at 393 (citation and internal quotation marks omitted).

### 2.     *There is no genuine issue of material fact regarding pretext*

In order to properly apply the preceding standards to this case, we note at the outset that Home Depot assumes for the sake of this appeal that Sybrandt has established a prima facie case of discrimination on the basis of her sex. Sybrandt, in turn, does not dispute that Home Depot has articulated a facially legitimate, nondiscriminatory reason for terminating her employment—i.e., that she was discharged for purportedly violating Home Depot's Code of Conduct. Instead, Sybrandt argues that the district court erred in granting summary judgment in favor of Home Depot because there is a genuine issue of material fact regarding whether Home Depot's stated reason for terminating her was simply a pretext used to hide sex-based discrimination.

Sybrandt articulates several criticisms of Home Depot's decision to terminate her in an effort to show that there is a genuine issue of material fact with regard to pretext. These critiques will be grouped together and discussed in the course of evaluating two overarching claims. First, Sybrandt argues that Home Depot's proffered reason for discharging her has no basis in fact. She next contends that the decision to terminate her employment was so unreasonable that a factfinder could conclude that Home Depot's stated ground for discharging her—that she violated company policy—was in actuality a pretext used to hide sex-based discrimination. We will address each of these points in turn.

### a.     *Home Depot had a factual basis for honestly believing that Sybrandt had breached company policy*

There is no material dispute about the acts that ultimately led to Sybrandt's discharge: (a) Sybrandt's user ID was utilized by a coworker to enter new information regarding the special order on November 30, 2005, and (b) Sybrandt entered electronic notes regarding her own special order on December 28 of the same year. Sybrandt's main contention on appeal is that these actions do not violate Home Depot's Code of Conduct because they do not involve "[c]reating, modifying or completing" a special-service transaction. Her argument thus boils down to a disagreement with Home Depot concerning whether these two incidents technically violate company policy.

But disputes about the interpretation of company policy do not typically create genuine issues of material fact regarding whether a company's stated reason for an adverse employment action is only a pretext designed to mask unlawful discrimination. This is because "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Auto. Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). "The key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained-of action." *Michael v. Caterpillar Fin. Serv. Corp.*, 496 F.3d 584, 598-99 (6th Cir. 2007) (citations and internal quotation marks omitted).

We conclude that there is no genuine issue of material fact as to whether Home Depot held an honest belief that Sybrandt had violated company policy. Home Depot

engaged in a thorough investigation to determine whether Sybrandt's conduct was inappropriate. A human resources representative (Atwill) and a loss-prevention manager (Bollinger) conducted the investigation. They interviewed Sybrandt and other employees regarding the events in question. The results of their investigation included a written description of security-camera footage, which depicted Sybrandt speaking with a coworker while the latter used Sybrandt's user ID to make entries on Sybrandt's special-service order on November 30, 2005. Furthermore, an Employment Practices Manager for Home Depot (Malowney) not only reviewed the initial results of the Atwill/Bollinger investigation, but also requested further factfinding before recommending Sybrandt's discharge. Home Depot's decision was therefore "reasonably informed." *See Michael*, 496 F.3d at 598 (citation and internal quotation marks omitted); *see also id*. at 600 (concluding that the employer "presented sound, nondiscriminatory reasons for [disciplining the employee] based on a reasonable investigation of events that occurred").

In addition to being reasonably informed, the decision to discharge Sybrandt reflected a "considered" judgment. *See id*. Malowney has always taken an uncompromising view of Home Depot's policy against "[c]reating, modifying or completing Special Services . . . transactions including special orders." He believes that "the whole point of that policy is that you don't do anything [in] a transaction that you are personally involved in." Malowney also interprets the policy to strictly forbid one employee from allowing another employee to use the user ID of the former. As a result of this strict approach to the policy, Malowney has consistently recommended the discharge of employees for making any entries in their own special orders. This practice is perhaps not so surprising given that one of the policy's purposes—as Sybrandt concedes—is to avoid even the *appearance* of wrongdoing.

Sybrandt has not produced any material countervailing evidence indicating that "the process [Home Depot] used to conduct the investigation was irregular or idiosyncratic." *See Allen v. Highlands Hosp. Corp., Inc.*, 545 F.3d 387, 398 (6th Cir. 2008) (holding that there was no genuine issue of material fact regarding pretext in the context of a claim based on the Age Discrimination in Employment Act of 1967). The only evidence that even hints at irregularity is the fact that Bollinger originally seemed unconcerned that Sybrandt entered electronic notes on her own special order. But this does not undermine our conclusion Malowney and his superiors—i.e., the Home Depot representatives who ultimately decided

to discharge Sybrandt—honestly believed that Sybrandt committed an offense worthy of termination. Whether Bollinger believed that the December 28, 2005 notes were violations of company policy is immaterial because Bollinger did not control the decision to discharge Sybrandt. Furthermore, we do not require a perfect decisional process. *See Michael*, 496 F.3d at 598-99 (holding that this court does not require "that the decisional process used by the employer be optimal or that it left no stone unturned.") (citation and internal quotation marks omitted).

In sum, Home Depot proffered a legitimate, nondiscriminatory reason for terminating Sybrandt. The record further demonstrates that Home Depot had an honestly held belief that she violated company policy because the decision to terminate her was "reasonably informed and considered." *See id.*

> **b.**      ***Home Depot's decision to terminate Sybrandt was not so unreasonable so as to give rise to an inference of pretext***

In addition to arguing that the decision to terminate her had "no basis in fact" under the first factor enumerated in *Manzer v. Diamond Shamrock Chemicals Company,* 29 F.3d 1078, 1084 (6th Cir. 1994), Sybrandt relies on more recent precedent holding that "the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc). Sybrandt argues that the decision to discharge her was "unfair and extreme," and can therefore give rise to an inference of pretext in light of the following considerations: (1) Home Depot allegedly failed to disseminate its strict interpretation of the policy that prevents employees from making any electronic entries regarding one's own special order, (2) Bollinger seemed unconcerned about Sybrandt's entering such notes, and (3) the facts that led to her termination—"forgetting to log out of her User ID and entering notes asking others to modify her order" do not demonstrate a lack of integrity. We conclude that Sybrandt's attempt to repackage her claim in terms of extreme unreasonableness is unavailing.

Turning to the first consideration, Home Depot's failure to disseminate its "strict interpretation" of its own policy does not create a genuine issue of material fact regarding pretext. Indeed, this court recently rejected what is essentially the same argument in the age-

discrimination case of *Allen*, 545 F.3d 387. One of the plaintiffs in *Allen* was a hospital employee who was terminated for removing x-rays from the hospital without written authorization—even though the x-rays were of the employee's own granddaughter. *Id.* at 391-92. The employee claimed that she had received oral permission to retrieve the x-rays from the child's mother (the employee's daughter), but the hospital maintained that the she had breached the hospital's confidentiality policy by failing to secure valid written authorization. *Id.* Nothing in the policy itself, however, explicitly stated that oral permission was an inadequate substitute for written authorization. *Id.* at 397-98. This court nevertheless held that "the fact that the [h]ospital would benefit from developing a more detailed policy on this issue does not mean that [the plaintiff] succeeded in creating a genuine issue of material fact about whether [the hospital's] stated reason for terminating [her] was a pretext designed to hide age-based discrimination." *Id.*

Similarly, Sybrandt has arguably shown that Home Depot might "benefit from developing a more detailed policy" regarding its strict interpretation of the "no-self-service" rule. *See id.* But the fact that there might be some ambiguity in Home Depot's Code of Conduct does not suffice to create a genuine issue of material fact about whether Home Depot's stated reason for terminating Sybrandt was a pretext designed to mask sex-based discrimination. *See id.*

The remaining two points raised by Sybrandt also fail to create a genuine issue of material fact regarding pretext. Bollinger's alleged unconcern about whether employees enter electronic notes regarding their own special orders is immaterial because he was not a decisionmaker with respect to Sybrandt's termination. And even if we accept that "forgetting to log out of her User ID and entering notes asking others to modify her order" do not per se demonstrate a lack of integrity, Sybrandt failed to present any evidence that Home Depot did not hold "an honest belief in its proffered nondiscriminatory reason for discharging" her. *See Majewski v. Auto. Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001).

In sum, Sybrandt argues against what she alleges is an overly strict interpretation of Home Depot's "no-self-service" policy. But this is not enough under our precedents. Of course, "[o]ne way in which the plaintiff may raise doubts about the lawfulness of the

employer's business decision is by suggesting that the decision itself was unreasonable." *White*, 533 F.3d at 394 n.6. Sybrandt's proof, however, is insufficient to allow a reasonable jury to conclude that Home Depot's policy decision was so unreasonable as to be disbelieved. Unlike the records in *White* and *Wexler*, which contained evidence directly supporting the plaintiff's argument, there is no evidence tending to show that Sybrandt's interpretation of the rule is superior to that of Home Depot's. Indeed, there is no evidence that Home Depot's interpretation was objectively wrong or inconsistent with its prior practice. *Cf. Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 527 (6th Cir. 2008) (holding that a jury could find the defendant's explanation that business conditions required the termination of the plaintiff unreasonable because, among other things, it was demonstrably false). Home Depot also conducted a reasonable investigation prior to Sybrandt's termination, which strongly supports the view that it made an honest rather than a pretextual decision when it relied on the self-service rule to terminate her. *See Smith*, 155 F.3d at 807 ("[T]he key inquiry is whether the employer made a reasonably informed and considered decision . . . .").

On this record, we conclude that a reasonable jury could not find that the application of Home Depot's self-service rule to Sybrandt was so unreasonable as to be disbelieved. *See Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006) (explaining that the rule in *Wexler* should not be used to turn the federal courts into a "super personnel department"). She has essentially based her case on the assertion that her activities were not clearly prohibited by the self-service rule. But this alone, without other evidence of employer unreasonableness or dishonesty—especially where a reasonable investigation has been conducted—does not suffice under our precedents to create a material dispute over whether Home Depot's proffered explanation was merely a pretext for an unlawful business practice.

Sybrandt has ultimately failed to highlight any material evidence suggesting that Home Depot's stated reason for discharging her was a pretext designed to mask sex discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (holding that an employer is entitled to a judgment as a matter of law where "plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred"). The bare fact that Sybrandt was replaced by a male employee, in the absence of any other

evidence that would support a charge of sex-based discrimination, is simply not enough to survive summary judgment.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.