NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1072
_____

UNITED STATES OF AMERICA

v.

RICHARD UNDERHILL,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-08-cr-00177-001)
District Judge:  Honorable Joy Flowers Conti
_____

Submitted Under Third Circuit LAR 34.1(a)
January 5, 2011

Before:  AMBRO and FISHER, *Circuit Judges*, and SÁNCHEZ,[*]*District Judge*.

(Filed: January 6, 2011)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

---

[*]The Honorable Juan R. Sánchez, District Judge for the United States District
Court for the Eastern District of Pennsylvania, sitting by designation.

Richard Underhill pled guilty to mail fraud in violation of 18 U.S.C. § 1341, and the District Court sentenced him to four years' probation, with the first six months to be served in a community confinement center and the next six months to be served in home detention. On appeal, Underhill challenges the District Court's calculation of the amount of loss attributable to his fraudulent conduct, as well as the reasonableness of his sentence. For the reasons stated below, we will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of the case. Therefore, we will set forth only those facts necessary to our analysis.

Underhill owned AARCO Real Estate, a real estate company that purchased and developed land. In 2002, Underhill was in the process of creating a housing development, Birch Ridge Village, in Washington County, Pennsylvania (the "Development"). Underhill purchased the land, but did not have sufficient credit to obtain a construction loan necessary for development of the land. To obtain the necessary funds, Underhill prepared and submitted a credit loan application using the name of one of his employees, Anthony Jacob. In so doing, he grossly overstated Jacob's income and assets and misstated Jacob's employer. Underhill knew that the information he included in the loan application was false at the time the application was prepared.

Based on the false information, Home Builders Finance approved the loan. Accordingly, on July 30, 2002, Jacob signed a loan agreement in the amount of $152,500 for the construction of a new home to be built on Lot 8 of the Development. The loan was collateralized by the land, as well as the home to be constructed on Lot 8.

Shortly after obtaining the loan, Underhill learned that Lot 8 was zoned for commercial use. Therefore, Underhill used the money to construct a home on Lot 2, while continuously representing to Home Builders Finance that the house was being constructed on Lot 8. After Home Builders Finance disbursed the entire $152,500 loan, Underhill was unable to make any payments on the loan and defaulted. At that point, Home Builders Finance discovered that no construction had taken place on Lot 8, where it held the mortgage.

Home Builders Finance instituted a civil suit against Underhill, Jacob, and several companies controlled by Underhill, seeking to recover the entire amount of the $152,500 loan, as well as accrued interest and costs. Home Builders Finance asserted various claims, including fraudulent misrepresentation, unjust enrichment, conversion, breach of contract, and racketeering. The civil suit settled. Underhill agreed to pay $200,000 to Home Builders Finance in order to resolve all outstanding debt on the construction loan. In exchange, Home Builders Finance agreed to return the deed to Lot 8 of the Development.

3

Following the civil suit, Underhill was indicted and charged with one count of mail fraud, in violation of 18 U.S.C. § 1341. He pled guilty. The Presentence Investigation Report ("PSR") calculated the amount of loss at $117,600, which represented the amount of the fraudulent loan ($152,500) reduced by the value of the land that was pledged as collateral for the loan ($34,900)[1]. Accordingly, the PSR designated Underhill's offense level at thirteen, consisting of a base offense level of seven, an eight-level enhancement for an amount of loss of $117,600, and a two-level reduction for acceptance of responsibility. Underhill was placed in a criminal history category of I, yielding a guideline range of twelve to eighteen months of imprisonment.

Underhill made several objections to the PSR. First, he claimed that the loss amount was zero, rather than $117,600, because the lender did not suffer any actual loss. Specifically, he argued that the amount of the fraudulent loan ($152,000) should be reduced by the amount he paid pursuant to the settlement agreement ($200,000). Second, he requested a departure or variance because the amount of loss allegedly over-represented the seriousness of the offense. Third, he requested a variance based on his history and characteristics.

At the sentencing hearing, the District Court heard arguments regarding the proper calculation of the amount of loss. Ultimately, the District Court adopted the PSR's loss

---

[1] The value of the land pledged as collateral for the loan was determined to be $34,900, the price at which a comparable neighboring lot was sold to an unrelated party in 2003.

figure of $117,600 and applied the corresponding eight-level enhancement. In so doing, the District Court found that there was no basis to conclude that the $200,000 settlement was paid entirely as disposition of collateral. Instead, the majority of the payment represented voluntary restitution on Underhill's part. The District Court, however, granted downward variances based on Underhill's history, characteristics, and the fact that the offense level substantially overstated the seriousness of Underhill's offense. Accordingly, Underhill was sentenced at criminal history I and offense level ten, which yielded a guideline range of six to twelve months of imprisonment. The District Court sentenced Underhill to a four-year term of probation, with the first six months to be served in a community confinement center, and the next six months to be served in home detention. Underhill timely appealed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We review the District Court's factual findings, such as the amount of loss, for clear error. *United States v. Jiminez*, 513 F.3d 62, 85 (3d Cir. 2008). However, we review de novo the methodology that the District Court used to calculate loss under the Guidelines. *Id.* at 85-86. We apply an abuse-of-discretion standard and review a sentence for reasonableness, which requires that the sentence be both procedurally sound and substantively reasonable. *United States v. Wise*, 515 F.3d 207, 217-18 (3d Cir. 2008).

5

III.

Underhill raises two issues on appeal. First, he contends that the District Court erred in applying an eight-level enhancement based on its calculation of loss. Second, he alleges that the sentence is both procedurally and substantively unreasonable. We will address each contention in turn.

A.

For offenses involving fraud, the Guidelines provide for an enhancement based on the amount of loss that resulted from the fraud. U.S.S.G. § 2B1.(b)(1). The offense level is increased by eight where the amount of loss is between $70,000 and $120,000. U.S.S.G. §§ 2B1.1(b)(1)(E)-(F). In calculating actual loss, note 3(E)(ii) to Section 2B1.1 of the Guidelines provides:

> In a case involving collateral pledged or otherwise provided by the defendant, [loss shall be reduced by] the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing.

U.S.S.G. § 2B1.1, cmt. n.3(E)(ii).[2]

Underhill argues that the District Court erroneously failed to consider the $200,000 settlement in its calculation of actual loss. Specifically, Underhill argues that the "disposition of the collateral" occurred when the deed was transferred pursuant to the

---

[2] The rule of lenity only applies where "there is a *grievous* ambiguity or uncertainty in the statute." *United States v. Flemming*, 617 F.3d 252, 270 (3d Cir. 2010) (emphasis in

settlement agreement, at which point Underhill simultaneously paid $200,000 to the victim. Therefore, Underhill maintains that Home Builders Finance experienced a "zero loss" fraud. This argument fails.

In calculating the total amount of loss, the District Court looked to "the amount of money the victim ha[d] actually lost (estimated at the time of sentencing)." *United States v. Kopp*, 951 F.2d 521, 536 (3d Cir. 1991) (en banc). The Guidelines provide two circumstances under which a defendant is entitled to receive credit to reduce the amount of loss. U.S.S.G. § 2B1.1, cmt. n.3(E). First, a sentencing court must subtract from the initial loss calculation any funds that were returned to the victim "before the offense was detected." *Id*. Here, Underhill paid $200,000 only *after* the offense was detected, and therefore cannot receive credit on this basis. Second, a defendant is entitled to credit for the amount of loss received by the victim upon disposition of the collateral. In other words, the loss is reduced by the pledged assets because those assets are always available for recovery. *See United States v. Austin*, 479 F.3d 363, 369 (5th Cir. 2007).

The District Court properly determined that the $200,000 settlement amount did not represent the value of collateral because the undeveloped land was not worth $200,000. Instead, Underhill made the $200,000 settlement payment not solely "for the disposition of the collateral," but also as partial voluntary restitution. He was therefore not entitled to the full $200,000 setoff. Accordingly, the District Court determined that

---

original) (quoting *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998)). It is

the proper setoff was the value of the property, which it found to be approximately $34,900. Moreover, "[a] defendant in a fraud case should not be able to reduce the amount of loss for sentencing purposes by offering to make restitution after being caught." *United States v. Mummert*, 34 F.3d 201, 204 (3d Cir. 1994). We hold that the District Court properly calculated loss under the Guidelines.

Underhill next challenges the District Court's factual finding regarding the fair market value of the collateral. The District Court "is in a unique position to assess the evidence" and "need only make a reasonable estimate of the loss." U.S.S.G. § 2B1.1, cmt. n.3(C). Accordingly, we must defer to the District Court's loss determination unless it is clearly erroneous. *Id.*; *see also Jiminez*, 513 F.3d at 85. The District Court determined that a reasonable estimate of the fair market value was $34,900, the amount at which a comparable neighboring lot was sold to an unrelated party in 2003. This is not clearly erroneous, and we accept the District Court's finding.

B.

We review a district court's judgment of sentence under an abuse-of-discretion standard for reasonableness. *United States v. Tomko*, 560 F.3d 558, 567 (3d Cir. 2009) (en banc). We first ensure that the District Court committed no significant procedural errors in arriving at its decision. *Wise*, 515 F.3d at 217. Procedurally, a "sentencing court is required to give 'rational and meaningful consideration' to the relevant § 3553(a)

therefore inapplicable here because the meaning of the Guidelines is clear.

factors." *United States v. Doe*, 617 F.3d 766, 769 (3d Cir. 2010) (quoting *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc)). Substantively, the "final sentence, wherever it may lie within the permissible statutory range, [must be] premised upon appropriate and judicious consideration of the relevant factors." *Doe*, 617 F.3d at 770 (quoting *United States v. Schweitzer*, 454 F.3d 197, 204 (3d Cir. 2006)). The record reflects that the District Court gave "meaningful consideration" to the relevant sentencing factors and weighed those factors against any mitigating considerations. *Doe*, 617 F.3d at 769. Accordingly, we conclude that Underhill's sentence was both procedurally and substantively reasonable.

IV.

For the foregoing reasons, we will affirm the District Court's judgment of sentence.