**FILED**
Dec 22, 2017
DEBORAH S. HUNT, Clerk

NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0700n.06

No. 17-5355

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MALINDA COOLEY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| EAST TENNESSEE HUMAN RESOURCE | ) | |
| AGENCY, INC., | ) | OPINION |
| | ) | |
| Defendant-Appellee. | ) | |

---

BEFORE: CLAY, GIBBONS, and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** Malinda Cooley appeals an order granting her former employer's motion for summary judgment on her claims under the Americans with Disabilities Act as amended ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* In granting summary judgment on her ADA claim, the district court concluded that no reasonable jury could find that Cooley was qualified for her job as a bus driver. *Cooley v. E. Tenn. Human Res. Agency, Inc.*, 243 F. Supp. 3d 941, 949–50 (E.D. Tenn. 2017). As to her FMLA claim, the district court concluded that Cooley had not met her burden of establishing that her employer's stated, nondiscriminatory reason for firing her was pretextual. *Id.* at 948–49. For the reasons that follow, we affirm the district court's order in both respects.

**I**

Plaintiff Malinda Cooley worked for Defendant East Tennessee Human Resource Agency, Inc. ("ETHRA") from March 14, 2006, until August 27, 2015, when she was fired. While employed, she drove a 16-passenger ETHRA van and transported ETHRA clients, including elderly and disabled passengers. Because her job required assisting some of these passengers, including those in wheelchairs, in getting into and out of the van, the job required the ability to lift up to fifty pounds without assistance.

Cooley's job also required her to hold a driver's license with an endorsement to transport clients. Cooley had the required license, a commercial driver's license (CDL). One of the requirements imposed on a CDL driver is that if she suffers a job-impairing injury, she has to be certified as physically qualified to return to work. 49 C.F.R. § 391.45(c). The certification comes from a medical examination that must be performed by someone on the National Registry of Certified Medical Examiners of the U.S. Department of Transportation ("DOT"). *Id.*; 49 C.F.R. § 391.43.

Cooley had a history of numerous back ailments. Those ailments worsened in February 2015, when she slipped on ice and fell in a non-work-related incident. Within months of that accident, Cooley requested leave under the FMLA to undergo back surgery. ETHRA granted her request.

Cooley's leave was set to expire on August 12, 2015. As of that date, she had no available accrued leave of any kind. But her personal physician did not clear her to return to work until August 24, 2015, and only with the following restrictions on her working conditions: "[n]o pushing, pulling or lifting greater than 30lbs." According to Dr. Hall's instructions, Cooley was cleared to return to work without restrictions after October 5, 2015.

Although Cooley exhausted her full twelve weeks of FMLA leave on August 12, 2015, in accordance with Dr. Hall's instructions, she did not return to work at that time. On August 25, 2015, Cooley faxed the following letter to ETHRA:

> To whom it may concern,
>
> I, Malinda Cooley, am requesting that my employer, East Tennessee Human Resource Agency, provide me a reasonable accommodation of the following: not doing manual wheelchairs which include pushing, pulling, tugging or lifting anything over the weight of thirty pounds until after October 5, 2015. This accommodation is being requested due to an intensive back surgery on June 3, 2015; time off approved by said agency.
>
> I, Malinda Cooley, will be able to work full time and do electric wheelchairs and I am willing to work with my employer to accommodate my reasonable request in any way possible.

Because she was attempting to return to work from a job-impairing injury, ETHRA required Cooley to first undergo a medical examination and provide a fitness-for-duty certification. To conduct Cooley's examination, ETHRA hired Dr. John McElligott, M.D., who is on the DOT's National Registry of Certified Medical Examiners.[1]

On August 27, Cooley underwent her examination. She admitted that she was taking hydrocodone, a narcotic-pain medication. Based on this admission, Dr. McElligott deemed her unfit to return to work. Specifically, Dr. McElligott found that safety-sensitive issues were present, Cooley was at risk of causing injury to herself or other employees, and Cooley did not meet OSHA standards for employment as described in 29 U.S.C. § 654. Having made these findings, he did not recommend her for employment. After her examination, Cooley delivered to ETHRA the paperwork showing she had failed.

---

[1] Cooley was familiar with this process. She had used FMLA leave on at least two prior occasions. On both occasions, before being allowed to return to work, she was seen by Dr. McElligott, who declared her fit for duty as a driver, and she went back to work immediately without incident.

When ETHRA received Cooley's exam results, Gary Holiway, ETHRA's executive director, was informed that Cooley had failed and could not return to work. As executive director, Holiway had sole discretion to terminate an ETHRA employee. Upon receiving news of Cooley's examination failure, Holiway decided to fire her. Cooley's separation notice states that she was discharged because she "[c]annot pass fitness for duty test."

After delivering her examination results to ETHRA, Cooley was driving home when she received a call from her immediate supervisor, Melissa Norris. Norris asked Cooley to return to the office. When she returned, Cooley was met by Norris, ETHRA's Human Resource Director (Dee Norman), and ETHRA's Transportation Director (Mike Patterson). Cooley brought with her the August 25 letter containing her request for various physical, working restrictions. During this meeting, Cooley was given her separation notice. Cooley testified that she was crying, her ears started ringing, and she was upset. She told the ETHRA employees that she failed her examination because she was still on hydrocodone and that she was only taking the medication at night and was being weaned off of it. The ETHRA employees told her that she could not return to work because she had failed her exam. Cooley left in a highly emotional state.

## II

On October 25, 2015, Cooley sued ETHRA in the United States District Court for the Eastern District of Tennessee, asserting claims for FMLA interference and retaliation. After receiving her right-to-sue letter from the EEOC, she filed an amended complaint on April 19, 2016, adding a claim for failure to accommodate under the ADA. After conducting discovery, the parties filed cross-motions for summary judgment. On March 20, 2017, the district court granted in full ETHRA's motion for summary judgment and denied Cooley's. Cooley filed a timely notice of appeal, but she appealed only the district court's grant of ETHRA's motion for

summary judgment. As to her FMLA claims, Cooley appeals only the district court's decision on her retaliation claim.

## III

### *A. Standard of Review*

We review a district court's grant of summary judgment de novo. *Williams v. AT&T Mobility Servs., LLC*, 847 F.3d 384, 391 (6th Cir. 2017). Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We must view all evidence in the light most favorable to the nonmoving party." *Williams*, 847 F.3d at 391. That said, unsupported allegations cannot defeat a properly supported motion for summary judgment. Fed. R. Civ. P. 56(c)(1). Nor will a mere "'scintilla' of evidence in support of the non-moving party's position" defeat summary judgment; "rather, the nonmoving party must present evidence upon which a reasonable jury could find in her favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

### *B. Discussion*

1. Cooley's ADA Claim

The ADA prohibits discriminating against qualified employees with a disability on account of that disability. An employer discriminates under the ADA when it fails to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(a); *Williams*, 847 F.3d at 391. To be "qualified" under the ADA, a disabled employee must be able to "perform the essential functions of" her job "with or without reasonable accommodation." 42 U.S.C. § 12111(8); *see E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015) (en banc). If a disabled

employee requires an accommodation, she must identify an accommodation and show both that it is reasonable and that it will enable her to perform the essential functions of her job. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010).

Cooley admits that when she was fired, she was unable to perform an essential function of her job—passing her fitness-for-duty examination. She argues only that she could have passed the exam with a reasonable accommodation, and that ETHRA's failure to provide that accommodation violated the ADA. As explained below, however, Cooley has failed to identify a reasonable accommodation that would have enabled her to pass her exam. Thus, she is not a qualified individual under the ADA, and her claim fails.[2]

i.      <u>Cooley failed to show that she could pass her fitness-for-duty examination with the work restrictions she requested.</u>

Cooley claims that prior to undergoing her fitness-for-duty examination, she asked for a reasonable accommodation—a change in her job duties to accommodate her pushing, pulling, tugging, and lifting restrictions. Her request is outlined in the fax that she sent to ETHRA on August 25, 2015, two days before she was discharged. In the fax, she requested

> that [her] employer . . . provide [her] a reasonable accommodation of the following: not doing manual wheelchairs which include pushing, pulling, tugging or lifting anything over the weight of thirty pounds until after October 5, 2015.

But Cooley failed to show that this accommodation would have "permit[ted] her to effectively perform the essential functions of her job." *E.E.O.C. v. Ford*, 782 F.3d at 763. If ETHRA had granted her the accommodations outlined in her fax, she nonetheless would have failed her fitness-for-duty exam because her working restrictions did nothing to address the reason she failed the exam—her narcotic usage. Cooley's narcotic usage rendered her an unsafe driver.

---

[2] Because Cooley has failed to establish that she is a qualified individual, we do not address the sufficiency of her disability evidence.

Pushing, pulling, tugging and lifting restrictions would not have alleviated her narcotic usage.

Thus, she failed to show that she was qualified for her job with these accommodations.[3]

> ii.    <u>Cooley failed to show that additional unpaid leave would have been a reasonable accommodation in this case.</u>

Perhaps recognizing her inability to show that her only requested accommodation could have enabled her to pass her fitness-for-duty examination, Cooley argues that she was qualified for her position with an alternate accommodation, additional unpaid leave. She asserts that even though she did not ask for this, if ETHRA had engaged in the "interactive process" sometimes required by the ADA, the parties could have settled on this accommodation.

Cooley's reliance on the ADA's interactive process puts the cart before the horse. The ADA's regulations indicate that "[t]o determine the appropriate reasonable accommodation [for a given employee,] it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]" to determine how an employee's disability limits her ability to work and to identify appropriate reasonable accommodations. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) (alterations in original) (quoting 29 C.F.R. § 1630.2(o)(3)). But the failure to engage in the ADA's interactive process "is actionable only if it prevents identification of an appropriate accommodation *for a qualified individual*." *E.E.O.C. v. Ford*, 782 F.3d at 766. As we have previously explained, when "the employee fails to create a genuine dispute of material fact that a reasonable accommodation would have allowed her to perform the essential functions of her job, she cannot survive summary judgment on an interactive-process claim." *Williams*, 847 F.3d at 395. Thus, for Cooley to succeed on her ADA

---

[3] Cooley argues that there is a disputed question of fact as to *when* she requested accommodations and that if the district court properly construed the evidence in her favor in rendering its summary judgment decision, a triable issue of fact remained as to when Ms. Cooley made such requests. But Cooley misses the point. Assuming she requested these accommodations prior to her employment termination, as we have done here, she cannot show she was qualified for her position with these accommodations.

claim, she must first show that additional unpaid leave would have been a reasonable accommodation for ETHRA to offer. She cannot do so for two reasons.

First, Cooley's own deposition testimony proves that additional unpaid leave was not a reasonable accommodation in this case. When a plaintiff admits that she would not have accepted an accommodation, she cannot meet her burden of showing that that accommodation would have been reasonable. *See Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1231–32 (10th Cir. 2009) (plaintiff's testimony that "she would not have accepted [a particular accommodation] as a reasonable accommodation suggests that, even if the [employer] had participated in the interactive process and offered her [that accommodation], she would have refused the offer."); *see also Stevens v. Rite Aid Corp.*, 851 F.3d 224 (2d Cir. 2017), *cert. denied*, 2017 WL 3456814 (U.S. Oct. 16, 2017) (holding accommodation unreasonable as a matter of law where plaintiff "offered no evidence that he requested, considered, or was open to" the accommodation he later identified). During her deposition, Cooley conceded that after twelve weeks of leave without pay, she was not in a financial position to accept additional unpaid leave. Cooley conceded that this "wasn't an option" because she "had been out of work for three months and had absolutely no money coming in." Her admission shows that even if ETHRA had offered additional unpaid leave, she would not have accepted it. *See Barber*, 562 F.3d at 1231–32. Therefore, this accommodation was not a reasonable one.

In opposing ETHRA's summary judgment motion, Cooley submitted an affidavit that walked back her deposition testimony. In her affidavit, she stated that if ETHRA had advised her that her only option to avoid immediate termination was to take additional leave without pay, she would have taken it. But Cooley's claim is not revived by her post hoc attempt to retract her admission. We have long held that a party "may not create a factual issue by filing an affidavit,

8

after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). "A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006).

Here, Cooley's affidavit directly contradicted her deposition testimony, and she failed to provide a persuasive justification for the contradiction. In her deposition, Cooley was specifically asked to confirm that at the time of her termination, additional leave without pay "wasn't an option," and she answered "that's correct." Not only was this testimony unequivocal, but Cooley also testified as to why further leave without pay was not an option: "[b]ecause [she] had been out of work for three months and had absolutely no money coming in." In her affidavit, Cooley claimed that she would have accepted this accommodation if it were her only option. These statements directly contradict one another. Having testified that leave without pay was not an option due to her financial circumstances, she then attempted to claim that a nonoption would have actually been an option if her employer presented it in a different way— i.e, as an ultimatum. This direct contradiction cannot create a factual dispute. *See Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 448 (6th Cir. 2017) (refusing to allow party's own affidavit to create dispute of fact where it "directly contradicted his deposition testimony in a key way"). After setting aside the impermissible contradictions in her affidavit, Cooley's testimony proves that additional unpaid leave was not a reasonable accommodation.

Even had Cooley not admitted that additional unpaid leave was not an option for her, her claim would fail for another, independent reason: she failed to provide ETHRA with a certain or credibly proven end to her leave. Although medical leave can sometimes constitute a reasonable

9

accommodation under the ADA, s*ee Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 783 (6th Cir. 1998), our case law is clear that when the proposed accommodation is an extension of a prior significant period of leave, the plaintiff must have demonstrated a clear prospect for recovery. *Williams*, 847 F.3d at 394. "[T]he relevant inquiry is whether [the employee] showed [her employer] a certain or credibly proven end to the leave." *Maat v. Cty. of Ottawa, Mich.*, 657 F. App'x 404, 413 (6th Cir. 2016) (internal quotation marks omitted); *see Robert v. Bd. of Cty. Comm'rs of Brown Cty., Kans.*, 691 F.3d 1211, 1218 (10th Cir. 2012) ("The employee must provide the employer an estimated date when she can resume her essential duties."). A "vague estimate" of the date that an employee can return to her job is insufficient. *Walsh v. United Parcel Serv.*, 201 F.3d 718, 727 (6th Cir. 2000).

Thus, for an additional leave of absence to be a reasonable accommodation under the ADA, the employee must, at a minimum, provide the employer with an estimated, credible date when she can resume her essential duties. *See Maat*, 657 F. App'x at 413; *Robert*, 691 F.3d at 1218 ("Without an expected end date, an employer is unable to determine whether the temporary exemption is a reasonable one.") Cooley provided ETHRA with no such date. The only statement that Cooley points to is her deposition testimony that during her termination meeting she told ETHRA that she was taking hydrocodone only at night and was being weaned off of it by her physician. But this statement did not provide ETHRA with a "certain or credibly proven end" to her additional leave. *See Maat*, 657 F. App'x at 413 (stating that employee's "hope that her leave of absence would be over in a few weeks is of little help"); *E.E.O.C. v. Ford*, 782 F.3d at 763–64 ("An employee's unsupported testimony that she could perform her job functions . . . does not preclude summary judgment, for it does not create a genuine dispute of fact."). Cooley's statement failed to provide ETHRA with even an *estimated* end to her leave because it

contained no timeframe for how long her weaning-off process would take. She provided no assurance whatsoever as to when she would have been able to return to work. No reasonable jury could find that Cooley's single, optimistic statement in her termination meeting provided ETHRA "a certain or credibly proven end to the leave." *Maat*, 657 F. App'x at 413.

The absence of evidence provided to ETHRA at the time of Cooley's termination regarding the length of her leave or her prospect for recovery differentiates this case from *Cehrs*, where we found that a reasonable jury could conclude that an employer was required to grant further leave as an accommodation. In *Cehrs*, an employee who was on an eight-week leave of absence for treatment for her psoriasis asked her employer to extend her leave by one month because her physician indicated that she needed another treatment. 155 F.3d at 778. Unlike in the present case, the plaintiff's request in *Cehrs* was accompanied by a physician's note estimating that she could return to work on a part-time basis by a defined date. *Id.* Thus, the employer was presented with a request for a definite and relatively short leave, accompanied by a physician's note evidencing a reasonable prospect of recovery.

Since *Cehrs*, we have held that even "[a] physician's estimate of a return date alone does not necessarily indicate a clear prospect for recovery." *Williams*, 847 F.3d at 394; *see also Maat*, 657 F. App'x at 412–13 (holding that additional leave was not a reasonable accommodation where employee presented physician's note estimating a return date because such vague estimate of a return date was uncertain); *Aston v. Tapco Int'l Corp.*, 631 F. App'x 292, 298 (6th Cir. 2015) (concluding that additional leave was not a reasonable accommodation even where employee had provided a physician's estimate of a return date because there was "no certain or credibly proven end [to the plaintiff's condition] in sight").

11

Here, we need not determine whether a physician's estimate would have been sufficient because Cooley did not present ETHRA with a physician's note addressing her narcotic usage or prescribing the period of any additional leave required to wean her off the hydrocodone. In the circumstances in this case, where the only evidence of recovery that Cooley presented to her employer was her statement during her termination meeting that she was being weaned off hydrocodone, no reasonable jury could find that ETHRA was required to grant her further leave as an accommodation.

Cooley has failed to show that she was qualified for her position with her requested pushing, pulling, tugging, and lifting restrictions. She has also failed to show that the only other accommodation she identified, additional unpaid leave, would have been a reasonable accommodation. Thus, Cooley failed to present sufficient evidence to allow a reasonable jury to find that she was qualified for her position as an ETHRA driver.

2.  Cooley's FMLA Retaliation Claim

The FMLA entitles an employee to twelve weeks of unpaid leave because of, among other events, a serious health condition. *See* 29 U.S.C. § 2612. The statute prohibits an employer from retaliating against an employee for exercising her right to FMLA leave. 29 U.S.C. § 2615(a)(2). When a plaintiff attempts to establish an FMLA retaliation claim based on circumstantial evidence, the *McDonnell Douglas* framework governs. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see, e.g.*, *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507–08 (6th Cir. 2006). Under this framework, the plaintiff bears the initial burden of showing a prima facie case: (1) the employee was carrying out an activity protected by the FMLA, (2) her employer knew she was exercising her rights under the FMLA, (3) the employer took adverse action against the employee, and (4) a causal link existed between the

protected activity and adverse action. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). If the employee establishes a prima facie case, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse action. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). If the employer offers such a reason, the burden shifts back to the employee to show that the articulated reason is a pretext to mask discrimination. *Id.*

Cooley's appeal presents two issues: (1) whether she met her burden of establishing the fourth element of a prima facie case of retaliation (i.e., that there was a causal connection between her taking FMLA leave and her termination) and (2) whether she met her burden of establishing pretext. Even assuming that she established a prima facie case, her claim nonetheless fails because she has failed to present sufficient evidence of pretext.

This court has held that the timing of an employee's firing in relation to the exercise of her FMLA rights may suffice to establish a causal connection for purposes of making out a prima facie case of retaliation. *See Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283–84 (6th Cir. 2012); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."). "We have found sufficient evidence of a causal connection where the time between the employee's leave expired . . . and the employee's termination was two to three months." *Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 409 (6th Cir. 2014) (citing *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007)). Here, Cooley was fired two weeks after exhausting her FMLA leave. *See Bryson*, 498 F.3d at 571 (holding temporal proximity for purposes of showing causation can be

measured from the date employee's FMLA leave expired). Further, she was terminated on the day she attempted to return to work. For purposes of this appeal, then, we assume that the temporal proximity was sufficient for Cooley to meet her prima facie burden of showing causation.

ETHRA, however, met its burden of establishing a legitimate, non-discriminatory reason for firing Cooley—that she was unable to return to work at the end of her FMLA leave. We have held that a defendant can meet its burden of articulating a legitimate, nondiscriminatory reason in FMLA retaliation cases when it "fires an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave." *Edgar v. JAC Prod., Inc.*, 443 F.3d 501, 506–07 (6th Cir. 2006). Because the parties agree that Cooley was unable to return to work when her leave expired, ETHRA has met its burden.

For the final step, we turn to Cooley's evidence of pretext. A plaintiff may establish pretext by showing that the employer's proffered reason (1) has no basis in fact, (2) did not actually motivate the action, or (3) was insufficient to warrant the action. *Seeger*, 681 F.3d at 285. Regardless of the method, the plaintiff must produce sufficient evidence for the jury to conclude that the employer's reason was false, and that discrimination was the real reason. *Id.* Unlike its role in establishing a prima facie case, "the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext." *Donald*, 667 F.3d at 763.

Cooley offers four alleged indicators of pretext: (1) Executive Director and decision-maker Gary Holiway did not consult with Norris, Cooley's supervisor, prior to making the termination decision; (2) ETHRA failed to allow her to take ninety days of unpaid leave; (3) ETHRA failed to attempt to determine why OHS refused to certify her as fit for duty, despite her personal physician's work release; and (4) ETHRA provided an additional reason for firing

her in its interrogatory answers that was not mentioned in her separation notice. As demonstrated below, none of these alleged indicators calls ETHRA's proffered reason into question.

First, Cooley claims pretext based on the fact that Holiway did not consult with Norris, Cooley's supervisor, prior to making the decision to terminate Cooley's employment. Indeed, Norris testified that Holiway did not seek her input prior to firing Cooley. But this fact provides no evidence that ETHRA did not terminate Cooley's employment for its proffered reason. In fact, as the district court properly recognized, Holiway's failure to consult Norris "lessens the chance that a retaliatory intent was behind Cooley's termination" because Norris, not Holiway, would have been aware of Cooley's FMLA status. *Cooley*, 243 F. Supp. 3d at 947. Holiway was not notified when an employee sought FMLA leave, and he played no role in deciding whether to bring back an employee after her leave ended. If Holiway was not aware of Cooley's FMLA leave status, then he could not have fired her for taking that leave. That Holiway did not consult Norris, who was aware of Cooley's FMLA leave status, provides no evidence that Holiway's decision to terminate her was motivated by an intent to retaliate against Cooley for exercising her FMLA rights.

Second, Cooley asserts that ETHRA failed to allow her to take ninety days of unpaid leave. According to ETHRA policies, employees may *apply* to take up to ninety days of unpaid leave. Cooley testified that she received and reviewed ETHRA's personnel policies, which included its leave-without-pay policy. Yet Cooley never applied for leave without pay and admitted in her deposition that she never requested such leave. That ETHRA had a potential benefit that Cooley chose not to pursue does not show that ETHRA retaliated against her for using her FMLA leave. Moreover, Cooley presented no evidence that ETHRA had a practice or

15

policy of reminding employees of the leave-without-pay option. *See Skrjanc*, 272 F.3d at 317 (explaining that to establish a reasonable inference of pretext based on dissimilar treatment, an employee must show that the employer "normally gives employees an opportunity . . ., or that another employee who had not invoked FMLA rights was [provided that opportunity]"). Without evidence that Cooley was treated differently from other employees with regard to ETHRA's 90-day leave-without-pay policy, she cannot establish retaliatory intent on this basis.

Third, Cooley argues a finding of pretext is supported by the fact that ETHRA failed to inquire as to why Dr. McElligott refused to certify her as fit for duty when her physician, Dr. Hall, released her to return to work. Cooley appears to be challenging the reasonableness of ETHRA's decision to rely on Dr. McElligott's opinion. A plaintiff may "demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 558 (6th Cir. 2009). But we have held that an employer making employment decisions may rely upon a medical opinion that is objectively reasonable. *Michael v. City of Troy Police Dep't*, 808 F.3d 304, 307 (6th Cir. 2015). That is exactly what ETHRA did here. ETHRA hired Dr. McElligott to conduct Cooley's examination. Dr. McElligott examined Cooley and issued a medical opinion that Cooley was not fit for duty. Cooley has offered no evidence calling this opinion into doubt. In fact, she testified in her deposition that she had reviewed the evaluation and did not disagree with it.

Moreover, ETHRA was not required to follow Dr. Hall's allegedly contrary opinion because Dr. Hall, unlike Dr. McElligott, is not on the DOT's Registry of Certified Medical Examiners. As previously explained, Cooley was required to undergo a fitness-for-duty

examination, and it had to be performed by a DOT Certified Medical Examiner. 49 C.F.R. §§ 391.45(c), 391.43(a). Because Dr. McElligott found Cooley unfit, if ETHRA had followed Dr. Hall's advice over Dr. McElligott's, both Cooley and ETHRA could have been penalized. *See* 49 U.S.C. §§ 31302, 31304(a)(1), 521(b)(2)(C), 521(b)(6)(B)(i). Thus, Cooley has not shown that ETHRA's reliance on Dr. McElligott's opinion, instead of Dr. Hall's, suggests pretext.

Fourth, Cooley argues that pretext can be shown by the fact that in an interrogatory response, ETHRA identified an additional reason for her firing that was not included in her separation notice. Evidence that an employer shifted justifications for an adverse employment action can support a finding of pretext because changing justifications over time calls into question the credibility of those justifications. *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002). But Cooley presents no evidence that ETHRA changed justifications. Cooley's separation notice provides that she was fired because she "[c]annot pass fitness for duty test." ETHRA has consistently maintained that this was the primary reason for her termination. In response to an interrogatory asking ETHRA to identify reasons for her discharge, ETHRA referred Cooley to her separation notice and added the additional reason that she acted in an insubordinate manner. As the district court explained, the fact that her separation notice did not include insubordination has a simple explanation: the separation notice was prepared before the meeting where Cooley's insubordination occurred. Because the notice predated the meeting, it could not have contained this additional justification. Thus, Cooley has not presented sufficient evidence of shifting justifications to demonstrate pretext.

Based on the evidence Cooley has presented, a jury could not reasonably find that she was fired in retaliation for exercising her FMLA rights, rather than for her inability to return to

work.  The district court therefore properly granted ETHRA summary judgment on her FMLA claim.

**IV**

In light of the foregoing reasons, we **AFFIRM**.