**Walter L. ASTON, Plaintiff–Appellant,**

v.

**TAPCO INTERNATIONAL CORPORATION; Cheryl Brisson; Beth Sherman; Dave Ulmer, Defendants–Appellees.**

No. 14–2476.

United States Court of Appeals, Sixth Circuit.

Nov. 23, 2015.

<hr />

**2.** Camacho does not dispute that there were

five or more participants. Appellant Br. 36.

BEFORE: COLE, Chief Judge; DAUGHTREY and DONALD, Circuit Judges.

BERNICE BOUIE DONALD, Circuit Judge.

This appeal arises out of an employment discrimination action asserted under the Americans with Disabilities Act ("ADA"), Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), and the Family and Medical Leave Act ("FMLA"). Plaintiff Walter Aston ("Aston") filed suit against his employer, Tapco International Corporation ("Tapco"), alleging that he was terminated because of his disability and deprived of a reasonable accommoda-

tion. The district court granted Tapco's motion for summary judgment and denied Aston's motion for partial summary judgment. We **AFFIRM**.

## I.

### A.

Tapco manufactures building materials, such as shutters and decorative roofing materials. At Tapco, Aston worked for about twenty years as a shipping and receiving clerk, a display builder, and a maintenance worker before he was terminated on November 22, 2010.

In May 2010, Aston suffered a heart attack and requested leave from his job to recuperate. He received 12 weeks of FMLA leave, as well as an additional 14 weeks of short-term disability leave, for a total of 26 weeks of leave. Even so, Tapco does not maintain a policy granting an employee more than the 12–week leave required by the FMLA. Neither does the company hold positions open for employees who are unable to return to work after they exhaust their 26 weeks of short-term disability benefits, yet it once did so for Aston in 2006 when he suffered his first heart attack.

To advise Tapco of Aston's medical restriction resulting from his heart attack, Aston's doctor, Dr. Karabajakian, completed a Short–Term Pay Extension Form on November 4, 2010, certifying that Aston was "continuously disabled (unable to work)" from May 22, 2010 until January 1, 2011. The form reported that Aston underwent a cardiac catheterization and angioplasty on May 23, 2010, and that Aston's course of treatment was, namely, an impending implantable cardioverter defibrillator ("ICD") surgery. Despite the impending surgery, Dr. Karabajakian marked "ok" next to all the job functions listed on the first page of the job descrip-

tion, but, on the last page of the form, he advised that Aston was to abstain from lifting items greater than or equal to 30 pounds in weight. Although Dr. Karabajakian read Aston's job description beforehand, Dr. Karabajakian testified in his deposition that he neither knew nor spoke to Aston about the amount of time Aston engaged in the various activities his job required. Nonetheless, Dr. Karabajakian submitted the form to Cheryl Brisson ("Brisson"), Tapco's Human Resources Director.

After reviewing the completed Short–Term Pay Extension form and noting the impending ICD surgery, Brisson searched the Internet for information about ICDs and subsequently understood ICDs to be devices implanted in heart patients to prevent sudden death. When Aston called Brisson on November 16, 2010 to discuss his insurance benefits and employment status, Brisson told Aston that the company had "pretty much decided to terminate his employment." R. 32–20, PageID 620. Given Aston's inability to return to work until January 1, 2011 and the company's refusal to approve leave beyond November 22, 2010, Brisson advised Aston to take long-term disability. Brisson insisted that Tapco would not likely accept his return to work if he was still subject to medical restrictions.

Aston responded by accusing the company of "railroading" him. R. 1, PageID 3. Denying the accusation, Brisson assured Aston that they felt that the job was too much for him but disclaimed that the decision was not yet final. Near the end of the conversation, Brisson told Aston that she would send him forms for insurance and long-term disability benefits.

On November 18, 2010, Aston called Dr. Karabajakian's office and told his nurse that he was going to lose his job if he was not released by his doctor to return to

work. In an unusual turn of events, Dr. Karabajakian amended, for no stated reason, Aston's medical restrictions, approving Aston's immediate return to work with one restriction: to not lift 30 pounds or more in weight. The next day, Aston called Brisson and left her a message stating that he could report to work on November 22, 2010 at 8:00 a.m. Brisson called Aston back the same day and told him that they "had already pretty much made up their minds that his job would probably be too much for him to handle." R. 32–20, PageID 621. She also stated that they already decided that long-term disability would be the best option for him but that she would still discuss the matter with her superior on Monday, November 22, 2010.

When Monday arrived, Brisson and Aston's direct supervisor, Beth Sherman ("Sherman"), called Aston around 3:20 p.m. to tell him that he had been terminated. A few days later, Aston received a letter dated November 16, 2010 stating the following:

> As you are not able to return to work with a release for full duty and due to the requirements of your job, we regret to inform you that we cannot accept a release other than to full duty. Therefore, your employment has been terminated effective 11/22/10.

Appellant's Br. 7. On or about December 3, 2010, Aston sent Tapco a written request for accommodation—to return to work. Aston claims that he received no response from Tapco until 18 months later, on May 31, 2012, when Tapco extended Aston an unconditional offer of reinstatement. The offer provided that Aston could perform the same job duties that he previously performed, on a full-time basis, with a few additional duties, while honoring Aston's medical 30–pound lifting restriction.

Finding the offer for reinstatement overdue, on June 22, 2012, Aston rejected the offer and, through his attorney, pursued a charge of discrimination with the Equal Employment Opportunity Commission. Aston filed the instant suit in the United States District Court for the Eastern District of Michigan on October 9, 2012, alleging disability discrimination and a failure to accommodate in violation of the ADA and its Michigan state corollary. Aston also filed a claim for violation of his rights under the FMLA, 29 U.S.C. § 2601, *et seq.*

The district court denied Aston's motion for partial summary judgment but granted Tapco's motion for summary judgment and entered judgment in favor of Tapco on July 10, 2013. Afterward, Aston timely filed a motion for reconsideration of the district court's opinion and order, which the district court also denied. On appeal before us are Aston's claims under the ADA and the Michigan PWDCRA only.

### B.

The ADA prohibits covered employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the Michigan PWDCRA, a covered person must "accommodate a person with a disability for purposes of employment, public accommodation, public service, education or housing unless the person demonstrates that the accommodation would impose an undue hardship." Mich. Comp. Laws § 37.1102(2).

### II.

We review a district court's grant of summary judgment *de novo. Villegas v.*

*Nashville*, 709 F.3d 563, 568 (6th Cir.2013). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Villegas*, 709 F.3d at 568. In determining whether summary judgment is proper, we view the facts and any reasonable inferences drawn from those facts in a light most favorable to the non-moving party. *Villegas*, 709 F.3d at 568.

To do so, this Court must first determine if there is a prima facie case: (1) that Aston is disabled; (2) that Aston is "otherwise qualified" for the position, either with or without reasonable accommodation; and (3) that Aston had been denied reasonable accommodation or subjected to an adverse employment decision because he is disabled. 42 U.S.C. § 12112(a); *see also Keith v. Cnty. of Oakland*, 703 F.3d 918, 923 (6th Cir.2013). Next, this Court must determine if the "challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer." *Hoskins v. Oakland Cnty. Sherriff's Dep't*, 227 F.3d 719, 724 (6th Cir.2000) (citation omitted).

Here, because there is no dispute that Aston was disabled at the time of his termination, this Court need only determine whether a genuine dispute of material fact indeed exists as to the second or third element of Aston's prima facie case—his being "otherwise qualified" for the job, with or without accommodation; or his being denied reasonable accommodation. *See Kleiber v. Honda of Am. Mfg. Inc.*, 485 F.3d 862, 869 (6th Cir.2007) (affirming the district court's summary judgment where a disabled employee was not "qualified" within the meaning set forth under the ADA to perform the job at an automobile manufacturing plant, with or without accommodation of a job coach). Based on the record, we conclude that there is no genuine dispute that Aston was not "otherwise qualified" and that he was not denied a reasonable accommodation.

### A.

■ First, Aston contends that the district court erred in finding that he was not "otherwise qualified" to perform the jobs of a shipping and receiving clerk and a display builder for Tapco, with or without a reasonable accommodation. The district court found that Aston's claims under the ADA and the PWDCRA fail as a matter of law largely because Aston's own doctor stated in his deposition that, based on his observations, Aston had been unable to perform his job since May 23, 2010, the date he had his heart attack, and continued to be unable to work through January, 2011, when he initially requested to return to work.

The ADA defines the term "qualified individual" to mean an "individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). An employee who cannot perform the job's essential functions is not a qualified individual under the ADA. *Hoskins*, 227 F.3d at 724. The ADA does not require employers to accommodate individuals who cannot perform the most essential functions of their job. *Id.* at 729; *see also* 29 C.F.R. § 1630.2(m)(1).

In *Hoskins*, we found that a disabled deputy sheriff who had been discharged for being unable to restrain inmates was not a "qualified individual" under the ADA mainly because restraining inmates was an essential function of the deputy's job. *Hoskins*, 227 F.3d at 726–27. The inquiry

into whether a function is essential is highly fact specific. *Id.* at 726. Taking as a whole the summary judgment evidence, such as the job description and duties, we affirmed in *Hoskins* the grant of summary judgment for the employer because the deputy was not otherwise qualified to perform the job. *Id.* at 731.

Here, Aston's own doctor advised Tapco of Aston's impending ICD and later testified that the standing, walking, bending, climbing, and reaching demands of Aston's job extended beyond Aston's physical capability and that Aston would not have been able to perform nearly half his duties had he returned to work on January 1, 2011. Therefore, had Aston returned to work, with or without accommodation, he would have been incapable of meaningfully completing any of the physical labor his job required of him.

The question is not whether he was qualified to work after January 1, 2011. However, the relevant time in determining whether a plaintiff is a "qualified individual" covered under the ADA is at the time of discharge. *Griffith v. Wal–Mart Stores, Inc.*, 135 F.3d 376, 380 (6th Cir.1998). Given Dr. Karabajakian's deposition testimony, it seems undisputed that, at the time of Aston's termination on November 22, 2010, Aston was not physically able to perform the essential functions of the job.

#### B.

#### i.

Next, Aston argues that the district court erred in denying his motion for partial summary judgment with respect to his discrimination and failure to accommodate claims under the ADA and the PWDCRA. Aston challenges the district court's analysis to the extent that the court grouped together his discrimination claim with his failure to accommodate

claim. Aston contends that by failing to acknowledge a distinction, the district court erred in finding that he had the initial burden of proposing an accommodation even with respect to his discrimination claim. We disagree.

Although Aston was not necessarily required to propose a reasonable accommodation under his disability discrimination claim, he was still required to establish that he was otherwise qualified under the ADA, with or without reasonable accommodation. Hence, the district court did not err, because, as noted above, Dr. Karabajakian's statement makes it clear that Aston was not "otherwise qualified."

#### ii.

In challenging the denial of his motion for partial summary judgment, Aston also argues that there is no genuine dispute that his discharge was due to his disability. He is correct. Tapco admitted to terminating Aston due to his disability. Brisson's letter informing Aston of his termination clearly states that: "Plaintiff was and continues to be unable to return to work, cannot perform the essential functions of his former position with or without reasonable accommodation, is totally and permanently disabled and exhausted his FMLA leave." Appellant's Br. 36. Further, Aston's supervisor, Sherman, admitted that Aston might have been considered to come back to work "if he was allowed to come back without restrictions from his doctor." R. 32–19, PageID 615. Thus, there is no discrepancy regarding Tapco's reason for terminating Aston—his disability.

More relevant, however, is the question of undue hardship. Would permitting Aston's return to work on January 1, 2011 impose an undue hardship for Tapco? We have found that when an employee's return date is not so certain, an em-

ployer is not required to keep open a job for an employee indefinitely. *See Walsh v. United Parcel Serv.*, 201 F.3d 718, 727 (6th Cir.2000) (finding that the plaintiff lacked a credible showing to sufficiently demonstrate why the nearly year-and-one-half leave that the defendant gave him was inadequate such that the defendant needed to provide additional time for leave). This situation goes beyond what constitutes a reasonable accommodation. At the time of Aston's termination, Tapco reasonably questioned whether Aston would be able to return to work, not only in November, or in January, but if ever. Just a few weeks before terminating Aston, Dr. Karabajakian informed Tapco of another impending major medical procedure that Aston needed to undergo. This would doubtlessly require additional time for recuperation. Aston had already been on an extended 26–week leave once before, in 2006, and, at the time of his termination, Aston was on his second leave of unknown duration, despite the request for return on January 1, 2011. With no certain or credibly proven end in sight, we therefore maintain as we did in *Walsh* that when, as here, "an employer has already provided a substantial leave, an additional leave period of a significant duration, with no clear prospects of recovery, is an objectively unreasonable accommodation." *Id.*

## C.

Last, Aston contends that the district court erred by precluding Aston from backpay, that accrued after June 22, 2012, the date he rejected Tapco's unconditional offer for reinstatement. The district court ruled that even if Aston's claims proceeded to trial, Aston is precluded from any award of backpay after June 22, 2012, because he did not fulfill his duty to mitigate damages. *See Madden v. Chattanooga City Wide Serv. Dep't,* 549 F.3d 666, 678–79 (6th Cir. 2008). The Supreme Court has held that an employer charged with discrimination can "toll the accrual of backpay liability by unconditionally offering the claimant the job he sought, and thereby providing him with an opportunity to minimize damages." *Ford Motor Co. v. EEOC,* 458 U.S. 219, 232, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982). On the other hand, Aston contends that Tapco's offer was not made in good faith, with no intentions to comply with the law, as evidenced by the following: (1) Tapco terminated Aston because its decision makers believed Aston to be "totally and permanently disabled"; (2) Tapco had the opportunity to retain Aston when it terminated him and had the opportunity to reinstate him shortly after his termination; (3) Tapco had already hired an employee to take over Aston's job five months after his termination; (4) Tapco made its unconditional offer of reinstatement through its attorney over 18 months after it previously had the opportunity to reinstate Aston; and (5) Tapco's attorney and the individual defendants referred to the offer of reinstatement as "Defendants Call Plaintiff's Bluff with Offer of Unconditional Reinstatement."

As the district court noted, the Sixth Circuit has not adopted the good faith exception as a special circumstance warranting the continued tolling of a plaintiff's backpay, even after an employee rejects an employer's unconditional offer for reinstatement. Because there is no dispute of material fact as to whether Aston was "otherwise qualified" for the job, we decline to decide whether Aston could accrue backpay after he rejected Tapco's offer of reinstatement.

## III.

■ Tapco and the individual defendants have moved for this Court to award sanctions under Federal Rule of Appellate

Procedure 38, 28 U.S.C. § 1912, and 28 U.S.C. § 1927. We carefully reviewed the case. Aston failed to establish a prima facie case for his claims, but even so, we do not find the case to have been frivolous from the outset. *See Gibson v. Solideal U.S.A, Inc.,* 489 Fed.Appx. 24, 28 (6th Cir.2012) (finding that losing on summary judgment does not automatically require imposed sanctions). The district court took appropriate action by dismissing Aston's claims. For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment in favor of Tapco and its denial of Aston's motion for partial summary judgment, and we **DENY** defendants' motion for sanctions.