**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 16a0456n.06

Case No. 15-1836

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 10, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| RENEE MAAT, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| COUNTY OF OTTAWA, Michigan; 58TH | ) | MICHIGAN |
| DISTRICT COURT, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: BOGGS and ROGERS, Circuit Judges; and BERG, District Judge.[*]

BOGGS, Circuit Judge. Plaintiff-Appellant Renee Maat worked as a court recorder for Judge Susan Jonas, a state trial judge who sits on Michigan's 58th District Court. In late 2010, doctors diagnosed Maat with a medical condition that required her to take time off work. Judge Jonas allowed Maat to work on a reduced schedule for nearly seven months. But when Maat's condition worsened and prompted her to request full-time leave, Judge Jonas discharged Maat. Maat eventually recovered and filed a federal complaint against the 58th District Court and Ottawa County, alleging that the two entities violated state and federal antidiscrimination law by

---

[*] The Honorable Terrence G. Berg, United States District Judge for the Eastern District of Michigan, sitting by designation.

refusing to grant her request for full-time leave. The district court granted both defendants'

motions for summary judgment, and Maat appealed. For the reasons given below, we affirm.

I

A

Michigan's judiciary comprises one "court of justice" with "several divisions." *Grand
Traverse County v. State*, 538 N.W.2d 1, 8 n.20 (Mich. 1995) (quoting 2 Constitutional
Convention 1961: Official Record 3384 (Austin C. Knapp ed. 1964)). These "divisions" include
the Michigan Supreme Court, the Michigan Court of Appeals, the Michigan Circuit Court, and
various other lower courts created by statute, including more than one hundred trial courts of
limited jurisdiction called "district courts." Mich. Const. art. VI, § 1.

The 58th District Court is one of those trial courts of limited jurisdiction, and operates a
"small, two judge" courthouse in Ottawa County's largest city, Holland. Appellee Ottawa
County Br. 34. Though part of an independent and unified judiciary, Michigan's district courts,
including the 58th District Court, have long depended on "local funding units" to finance their
operations. *Grand Traverse County*, 538 N.W.2d at 8. Ottawa County is the designated local
funding unit for the 58th District Court, and is thus responsible for raising and providing
whatever funds the Court needs to operate.

Although the Michigan Constitution limits local funding units' involvement in judicial
operations, *see Judicial Attorneys Ass'n v. State*, 586 N.W.2d 894, 897 (Mich. 1998), the state
constitution allows the Michigan judicial system, "*on its own authority*," to share "some limited
employment-related decision making" with other branches or levels of government, *id.* at 899.
Exercising this authority, the Michigan Supreme Court has encouraged district courts to adopt
personnel policies that are compatible with those of their local funding units for purposes of

"compensation, benefits, holidays, and pensions." *Turppa v. County of Montmorency*, 710 F. Supp. 2d 619, 628 (E.D. Mich. 2010); *see also* Mich. Supreme Court Admin. Order No. 1998-5 § 6 (2014). The Michigan Supreme Court has also given the district courts' chief judges authority to designate representatives of local funding units to act on the courts' behalf for collective-bargaining purposes. Mich. Supreme Court Admin. Order No. 1998-5 § 8. In line with these policies and prevailing Michigan law, the chief judge of the 58th District Court has adopted much of Ottawa County's benefits structure, has delegated human-resources duties to Ottawa County, and allows Ottawa County to participate in collective bargaining with the Court's employees. Appellee 58th District Court Br. 26 & n.13.

The result is that even though Ottawa County lacks unilateral authority to dismiss 58th District Court employees under state law, *see Judicial Attorneys Ass'n*, 586 N.W.2d at 898; *Gray v. Hakenjos*, 115 N.W.2d 411, 414 (Mich. 1962), Ottawa County is responsible for many functions traditionally undertaken by an employer by virtue of authority delegated by the 58th District Court. For example, 58th District Court employees receive their paychecks and fringe benefits from Ottawa County, which is listed as their employer on federal IRS Form W-2. When applying for jobs with the Court, applicants must complete and sign an Ottawa County application form that affirms their interest in future "employment with Ottawa County," acknowledges that Ottawa County may terminate the employment relationship at any time, and requires prospective employees to "agree to conform to the rules and regulations of Ottawa County." Although it appears that all human-resources decisions ultimately rest with the relevant 58th District Court department heads, those department heads regularly consult with Ottawa County's human-resources specialists. For collective-bargaining purposes, the 58th

District Court's employee union negotiates with both the "Judges of the Fifty-Eighth Judicial District" and representatives from Ottawa County.

In November 2007, the 58th District Court hired Plaintiff-Appellant Renee Maat as a deputy clerk in its Holland courthouse. About one year later, Judge Susan Jonas's court recorder announced that she would be leaving for another position. In Michigan's district courts, court recorders work closely with one particular judge. In addition to making audio recordings and transcripts of proceedings, a court recorder types opinions and letters, helps to compile jury instructions, manages the judge's schedule, and contacts attorneys on behalf of the court, among other duties. For this reason, Michigan law gives 58th District Court judges the authority to select and manage their own court recorders. *See* Mich. Comp. Laws § 600.8601; Mich. Court R. 8.110(C)(3)(d); *Irons v. 61st Judicial Dist. Court Empl's Chapter of Local No. 1645*, 362 N.W.2d 262, 266 (Mich. Ct. App. 1984). Judge Jonas thus undertook the task of advertising the newly open position of court recorder and, after interviewing several candidates, selected Maat to fill the opening.

Judge Jonas got along well with Maat and reported that she was pleased with Maat's work. But shortly after Thanksgiving in 2010, Maat began to feel ill. Maat called her primary-care physician, who instructed her to go straight to the emergency room. Hospital physicians discovered three blood clots in Maat's right lung and another in her brain. This serious condition put Maat, who was hospitalized for three days, at risk of a stroke and heart failure. As Maat's physician explained, even non-fatal blood clots in the brain can cause intracranial pressure and "everything from blurred vision to headaches to fatigue" as well as "other incapacitating symptoms." Doctors prescribed Maat blood-thinning medication, which—in addition to the headaches from which she was already suffering—caused her anxiety and dizziness.

4

After the hospital discharged Maat, she anticipated that her symptoms and side effects would periodically require her to stay home or miss work to attend medical appointments. On December 7, 2010, she contacted the 58th District Court and requested intermittent leave pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq., until May 29, 2011. Cindy VanderPeyl, the 58th District Court's chief clerk, approved Maat's application for FMLA leave, which Maat used on occasion. By January, however, Maat's condition had worsened. Her light-headedness and dizziness had become more severe, and she began to have difficulty concentrating. On January 31, she submitted a second request for FMLA leave, this time asking that she work only on a part-time basis through July 31.

Barry Kantz, who worked as the 58th District Court's administrator, approved Maat's request for part-time leave through the end of July, but noted that Maat would exhaust her FMLA leave on June 15, 2011. Until Maat was able to return on a full-time basis in August, Judge Jonas needed a court recorder who could work full time. In order to accommodate Maat's request, the 58th District Court proposed that Maat temporarily swap jobs with Jodi Bruinsma, who worked as a full-time court clerk in the Holland courthouse. Maat agreed to the switch and worked for four hours a day as a clerk, in which capacity she accepted payments and filings and directed people into courtrooms for arraignment.

Although the temporary arrangement worked well for Maat, others in the 58th District Court were not as pleased. The most significant problem was that Bruinsma lacked the necessary certification to prepare court transcripts. Whenever a party before Judge Jonas requested a transcript, other 58th District Court employees with the requisite certification would have to prepare the transcripts in addition to their other regular duties. These employees began to complain that they had too much work, and, according to Judge Jonas, the delays involved

5

meant that the court "was not projecting consistency to the parties and lawyers" before it. Moreover, Bruinsma was not familiar with the audio-recording equipment in Judge Jonas's courtroom, forcing the Judge to "frequently cal[l] upon" the chief judge's court recorder to "leave her regular job duties to troubleshoot technology issues" in Judge Jonas's courtroom. As a temporary employee, Bruinsma was also not as adept as Maat at completing the secretarial tasks required of the new position, such as preparing orders, correspondence, and opinions.

Despite these problems, Judge Jonas and the 58th District Court managed throughout the winter and spring. By the beginning of June, Maat had nearly exhausted her FMLA leave, and Barry Kantz organized a meeting with Maat, at which two Ottawa County human-resources specialists, Marcie VerBeek and Erin Rotman, and the chief clerk, Cindy VanderPeyl, were also present. Kantz reminded Maat that her FMLA leave would expire on June 15, 2011, and pledged that the 58th District Court would continue to provide her with part-time leave until July 11, 2011, not—for reasons unknown—through the end of July as previously promised. After the meeting, Maat submitted a new request for part-time leave, from June 21, 2011 until July 11, 2011. The request was approved, and Judge Jonas was told that Maat would be returning to full-time work on July 11. Maat, who continued to suffer from blood clots, moved up a visit to see a specialist at the University of Michigan, and sent an email to several colleagues explaining that she had been "informed [that] if I cannot work full-time by July 11, I will be terminated."

Observing that Maat's medication had still not dissolved her blood clots, physicians at the University of Michigan prescribed Maat a new medication. The new medication "completely incapacitate[d]" Maat and forced her to miss work on June 17, a Friday. After consulting with her physician, Maat called Rotman to explain that she had experienced an adverse reaction to her medication, that her doctor "might be taking [her] off" work, and that "at that particular time [the

6

doctor] had no idea of how long it would take" for her to recover. The following Monday, Maat submitted a new leave-of-absence request, asking that the 58th District Court extend her leave until August 1, 2011, and that the court convert her leave from part-time leave to full-time leave. Maat attached a form completed by her primary-care physician, who wrote that Maat's blood clots "persis[ted] despite anticoagulation" treatment, and that she was thus "unable to perform work of any kind," could not sit or stand for long periods of time, and was expected to undergo "multiple medication trials," "[n]euro/vascular surgery," and oncological examination.

Upon receiving Maat's new request, Ottawa County's human-resources personnel informed Cindy VanderPeyl that the 58th District Court could dismiss Maat if her new request for full-time leave would pose an undue hardship for the court. VanderPeyl then went to Kantz, and both discussed Maat's request with Judge Jonas. Judge Jonas was concerned that Maat's physicians still "did not appear to understand what had caused the emboli" and that Maat "continued to have problems with [the] condition," which left the Judge with the "perception that little progress had been made in determining what was wrong." Citing "the hardships in [the] court and the fact that there did not seem to be any relief with [Maat's] return on the horizon," Judge Jonas decided that she had to fill the "critical position" with a permanent and properly credentialed recorder and terminated Maat's employment. Kantz and VanderPeyl apparently told Marcie VerBeek about Judge Jonas's decision. In a June 21, 2011, letter printed on Ottawa County letterhead, VerBeek informed Maat that she had exhausted her FMLA leave, that Maat's "Department Head" had denied her request for a full-time leave of absence, and that her "employment with Ottawa County" had been terminated.

B

Maat eventually recovered and filed suit in federal district court against the 58th District Court and Ottawa County. As amended, Maat's complaint alleged that both entities were her joint employers and had violated Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), Mich. Comp. Laws § 37.1101 et seq., and the federal Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 et seq., by dismissing her without accommodating her medical condition. Maat also alleged that Ottawa County had violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., by failing to accommodate her disability. Maat requested economic damages for lost wages, non-economic damages including compensation for emotional distress, and equitable relief including an order of reinstatement.

The 58th District Court and Ottawa County moved for summary judgment on all of Maat's claims. The district court heard oral argument and granted both defendants' motions. This appeal followed.

II

A district court may grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, the mere existence of an alleged factual dispute "will not defeat an otherwise properly supported motion for summary judgment" so long as there is no "*genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In deciding a summary-judgment motion, the district court may consider as undisputed any supported assertion of fact not properly addressed by the opposing party. Fed. R. Civ. P. 56(e)(2). And though the federal rules allow the district court to consider any material in the record, the district court is only obliged to consider evidence cited by the parties. *Id.* R. 56(c)(3).

On appeal, we review a district court's decision to grant or deny summary judgment de novo, *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 619 (6th Cir. 2006), considering only the evidence that the district court considered "unless a party demonstrates that the [district] court abused its discretion in disregarding properly submitted evidence," *Conley v. Pryor*, 627 F. App'x 697, 699 (10th Cir. 2015); *see also Zucker v. City of Farmington Hills*, No. 15-1202, 2016 WL 1019041, at *11 (6th Cir. Mar. 14, 2016). We consider the evidence and "all inferences drawn therefrom in the light most favorable to the non-moving party," in this case Maat. *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000). In conducting our review, we may affirm "on any grounds supported by the record," even those that the district court did not rely upon. *Freeze v. City of Decherd*, 753 F.3d 661, 664 (6th Cir. 2014).

We begin our independent review of the summary-judgment orders in question by considering Maat's PWDCRA claims against Ottawa County and the 58th District Court, before turning to her Rehabilitation Act and ADA claims against Ottawa County. Because Maat does not challenge the district court's adjudication of her Rehabilitation Act claim against the 58th District Court, we do not consider that claim on appeal.

III

The PWDCRA is a state antidiscrimination statute that seeks to encourage "the employment of [those with disabilities] to the fullest extent reasonably possible." *Peden v. City of Detroit*, 680 N.W.2d 857, 863 (Mich. 2004) (quoting *Chmielewski v. Xermac, Inc.*, 580 N.W.2d 817, 821 (Mich. 1998)). In order to achieve this goal, the PWDCRA requires covered employers, including the 58th District Court and Ottawa County, to "accommodate a person with a disability" unless "the person demonstrates that the accommodation would impose an undue hardship." Mich. Comp. Laws § 37.1102(2).

9

However, the PWDCRA does not prohibit an employer from refusing to accommodate an employee "whose disability is directly related to the employee's ability to perform the duties of her job." *Szasz v. Dolgencorp, LLC*, No. 12-15619, 2014 WL 4678024, at *3 (E.D. Mich. Sept. 18, 2014); *see also Carr v. Gen. Motors Corp.*, 389 N.W.2d 686, 689 (Mich. 1986) ("The Legislature . . . has mandated, not just once, but many times throughout the [PWDCRA], that the only [disabilities] covered by the act, for purposes of employment, are those unrelated to ability to perform the duties of the position."). Consistent with this qualification, the PWDCRA does not protect a plaintiff who, "on the date of [her] discharge is unable to perform the requirements of [her] job because of a disability" even if the plaintiff "would have regained the capacity to do the work within a reasonable time." *Lamoria v. Health Care & Ret. Corp.*, 593 N.W.2d 699, 701 (Mich. Ct. App. 1999) (per curiam); *see also Ashworth v. Jefferson Screw Prods., Inc.*, 440 N.W.2d 101, 102–04 (Mich. Ct. App. 1989) (holding that injured employee failed to state a claim under PWDCRA even though he informed his employer that he could return to work in two months).

In this case, Maat was unable to perform the requirements of her job when she was discharged. Maat acknowledges that a court recorder must be present in the courthouse for approximately forty hours weekly, and even longer during trials. Maat's regular duties included tasks that required her physical presence in the courthouse, such as operating audio-recording equipment, preparing transcripts, and scheduling. But by the time Maat requested the leave at issue here, her health condition had rendered her unable to be present in the courthouse and therefore unable to fulfill her duties as a court recorder: In a note that Maat submitted as part of her request for full-time leave, Maat's physician wrote that Maat was suffering from "persistent

headaches & fatigue," could not sit or stand for long periods of time, and was "unable to perform work of any kind."

There is no dispute, then, that as of the date of her termination, Maat could not complete her job functions. Under Michigan law, this reality precludes her from obtaining relief under the PWDCRA. As the Michigan Court of Appeals has clearly explained, "[a]n employer's duty to make 'reasonable accommodation' under the [PWDCRA] does not extend to granting the plaintiff a medical leave until such time as he would be able to perform the requirements of his job." *Kerns v. Dura Mech. Components, Inc.*, 618 N.W.2d 56, 64 (Mich. Ct. App. 2000) (citing *Lamoria*, 593 N.W.2d at 701). Because Maat was unable to perform her duties of a court recorder at the time she was dismissed, she is not entitled to relief under the PWDCRA.

IV

In addition to her PWDCRA claims, Maat argues that Ottawa County violated both the ADA and the Rehabilitation Act because the County was her joint employer and also participated in the 58th District Court's denial of her request for full-time unpaid medical leave from June 17 until July 31 and her subsequent dismissal. Ottawa County urges that it cannot be held liable for any ADA or Rehabilitation Act claims because state law gave it no control over Maat and because it did not make the decision to dismiss her. We need not resolve the dispute over whether Ottawa County was Maat's employer, or address the implications for the county's sovereign immunity that an answer could create, *cf. Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 760 (6th Cir. 2010), because we are satisfied that Maat has not shown that she would be entitled to relief even if Ottawa County was her joint employer and participated in her dismissal.

A

The ADA prohibits covered employers from discriminating against individuals on the basis of disability. 42 U.S.C. § 12112(a). The statute provides:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The key term, "discriminate," is defined at 42 U.S.C. § 12112(b) as including several acts, among them "not making reasonable accommodations to the known . . . limitations of an otherwise qualified individual with a disability who is an applicant or employee" unless the employer shows that "the accommodation would impose an undue hardship on the operation of [its] business." *Id.* § 12112(b)(5)(A). An "otherwise qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). A "reasonable accommodation," in turn, "may include":

> making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

*Id.* § 12111(9). Although we have sometimes characterized the inquiry into an accommodation's reasonableness as a "benefit burden type analysis," we have also acknowledged that such analysis is of questionable help in situations where the requested accommodation is a lengthy period of medical leave. *Walsh v. United Parcel Serv.*, 201 F.3d 718, 727 n.5 (6th Cir. 2000).

Just as the ADA, the Rehabilitation Act forbids discrimination against "otherwise qualified individual[s] with a disability," 29 U.S.C. § 794(a), and the same basic ADA analysis, albeit with a more rigorous causation requirement, applies to Maat's Rehabilitation Act claims,

*see Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314–15 (6th Cir. 2012) (en banc); *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010).

A litigant may prove an ADA or Rehabilitation Act violation indirectly, using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Johnson v. Univ. Hosps. Physician Servs.*, 617 F. App'x 487, 490–91 (6th Cir. 2015). But where, as here, a plaintiff argues that she has direct evidence of discrimination, such as her employer's denial of an allegedly reasonable accommodation, *see Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868–69 (6th Cir. 2007); Appellant Br. 39, a plaintiff may defeat her employer's summary-judgment motion by producing evidence that she is disabled and "otherwise qualified" for the relevant position—in other words, that she could perform her job with a reasonable accommodation, *see Keith v. County of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013); *Kiphart v. Saturn Corp.*, 251 F.3d 573, 581 (6th Cir. 2001). If the plaintiff satisfies that burden, the burden of persuasion shifts to the defendant to prove that there is no material dispute that accommodating the plaintiff would impose an undue hardship on the defendant's operations. *Keith*, 703 F.3d at 923.

B

In this case, the parties agree that Ottawa County knew that Maat was disabled and denied her an accommodation that she requested. The relevant question is thus whether the evidence, taken in Maat's favor, could show that Maat was qualified for her position as a court recorder with a "reasonable" accommodation. *See Chui v. Donahoe*, 580 F. App'x 430, 437 (6th Cir. 2014); *Camp v. U.S. Pipe & Foundry Co.*, 80 F. App'x 447, 449 (6th Cir. 2003). Pointing to our holdings that, under certain circumstances, unpaid medical leave can be a "reasonable accommodation" for purposes of the ADA, *see, e.g., Cehrs v. Ne. Ohio Alzheimer's Research*

*Ctr.*, 155 F.3d 775, 782–83 (6th Cir. 1998), Maat argues that the evidence in the record allows her to prove a case of discrimination. Maat also observes that we have held that medical leave could be reasonable as a matter of law even though it was far longer than the six-week-long absence she requested in June 2011. *See Cleveland v. Fed. Express Corp.*, 83 F. App'x 74, 79 (6th Cir. 2003).

Assuming that these precedents survive our more recent en banc decision in *EEOC v. Ford Motor Co.*, 782 F.3d 753 (6th Cir. 2015) (en banc), the length of leave requested is not the only determinant of the reasonableness of an accommodation. Importantly, where an employer has already provided an employee with a lengthy period of medical leave, an extension to that leave can be a reasonable accommodation only when its duration is definite. In *Walsh v. United Parcel Service*, 201 F.3d 718 (6th Cir. 2000), for example, we held that an airplane pilot's request for an extension to his year-long medical leave was unreasonable because the pilot could not, at the time he made the request, show with any certainty when he would recover. *Id.* at 727. We explained that "when, as here, an employer has already provided a substantial leave, an additional leave period of a significant duration, with no clear prospects for recovery, is an objectively unreasonable accommodation." *Ibid.*

We recently applied the *Walsh* holding in *Aston v. Tapco International Corp.*, 631 F. App'x 292 (6th Cir. 2015), where the plaintiff, a maintenance worker, suffered a heart attack and took nearly seven months of medical leave while he recuperated. *Id.* at 294. After this period elapsed, the employer refused to grant the plaintiff an additional six-week extension and discharged him. *Id.* at 294, 298. We held that because there was "no certain or credibly proven end [to the plaintiff's condition] in sight," the requested extension went "beyond what constitutes a reasonable accommodation." *Id.* at 298.

14

As in *Walsh* and *Aston*, the 58th District Court provided Maat with a substantial medical leave, and the additional leave that she requested was just as open-ended as the requested extensions in those two cases. It is undisputed that by the time Maat submitted her request for full-time leave through the end of August 2011, her medical condition had worsened, she was "completely incapacitate[d]" and expected to undergo surgery, and "at that particular time [her doctor] had no idea of how long it would take" with "the medications and the treatment." Although a form completed by Maat's physician listed August 1, 2011, as the end date for Maat's leave, the doctor did not indicate the "probable duration of [Maat's] condition," nor could he: Maat's physician observed that Maat would have to undergo further testing, "multiple medication trials," "[n]euro/vascular surgery," and oncological examination. Indeed, Maat testified that she and her doctor had not discussed whether six weeks of leave "was too long or long enough," and she agreed that August 1 "was just a date [doctors] would *hope* that [she] *might* be able to return to work." In the face of so much uncertainty, no rational juror faced with these facts could conclude that Maat requested leave with a well-defined end. *See id.* at 298.

Nevertheless, relying on the fact that she requested leave only until August 1, Maat protests that the leave she requested did have a "definite" end. But Maat's hope that her leave of absence would be over in a few weeks is of little help; the relevant inquiry is whether Maat showed Ottawa County a "certain or credibly proven end" to the leave. *Ibid.* In *Aston*, we recounted the overwhelming uncertainties in the plaintiff's prognosis and rejected the notion that the plaintiff's projected date of return could establish that his requested leave had a definite end. *Id.* at 297–98. This was so even though the plaintiff's physician had also approved the return date. *Id.* at 294–95. Given that the plaintiff was scheduled to undergo "another impending medical procedure," had already taken twenty-six weeks of leave, and suffered from a condition

that had not improved, it was clear that his employer "reasonably questioned" when and whether he would return to work. *Id.* at 298. The same is true here, where Maat had already worked on a reduced schedule for nearly seven months, had a medical condition that in her doctor's own words "didn't seem to be getting better," and expected to undergo various treatments without any clear prospect of recovery.

Nothing in *Cleveland* or *Cehrs* requires a different result. Although we concluded that the requested medical leave in both of those cases was not unreasonable as a matter of law, both involved periods of leave that had a definite end. *See Cleveland*, 83 F. App'x at 79 ("Ms. Cleveland was not suffering from an acute medical condition that might well persist indefinitely . . . ."); *Walsh*, 201 F.3d at 726 ("[T]he *Cehrs* Court was confronted with a situation where a request for a definite and relatively short leave was made, accompanied by a reasonable prospect of recovery."). Moreover, unlike Maat, the plaintiff in *Cehrs* produced evidence that her employer had given non-disabled employees comparable periods of leave, which created an inference of discrimination. 155 F.3d at 783.

Because Maat's requested leave was not definite in duration, it could not have been a reasonable accommodation under the law of this circuit. For this reason, Maat has failed to show that she was able to perform her job tasks with such an accommodation, and there is thus no genuine dispute that she was not "otherwise qualified" to perform her job as a court recorder at the time that she submitted her request for full-time leave. Because our precedents require plaintiffs to submit facts capable of showing that they are "otherwise qualified" for their positions in order to defeat an employer's motion for summary judgment under the ADA and the Rehabilitation Act, *see Aston*, 631 F. App'x at 296, the district court properly granted Ottawa County's motion for summary judgment on Maat's ADA and Rehabilitation Act claims.

16

V

In sum, Maat's Michigan-law claims lack merit because the PWDCRA does not require employers to provide employees with extended medical leave. Maat's ADA and Rehabilitation Act claims fail because she cannot show that the leave she requested had a definite end. We thus AFFIRM the district court's entry of judgment for the 58th District Court and Ottawa County.